**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ESTATE OF RICKEY L. KNOX, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:05-CV-19-PRC |
| | ) | |
| WILLIAM WHEELER d/b/a WHEELER | ) | |
| AROUND TRUCKS, ARLINGTON METALS | ) | |
| CORP., NATIONAL STEEL CORP., and | ) | |
| TRIPLE LADY'S AGENCY INC. d/b/a | ) | |
| TL EXPRESS, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Triple Lady's Agency, d/b/a TL Express's

Motion for Summary Judgment [DE 35], filed by Defendant Triple Lady's Agency Inc. d/b/a TL

Express ("TL Express") on April 25, 2005.  For the following reasons, Defendant TL Express's

Motion for Summary Judgment is granted.

**PROCEDURAL BACKGROUND**

On January 18, 2005, a Complaint was filed by the Estate of Rickey L. Knox, Sr. ("Estate"),

Mischell Knox, and Rickey L. Knox, Jr., alleging that the actions of William Wheeler d/b/a Wheeler

Around Trucks ("Wheeler"), Arlington Metals Corporation ("Arlington"), National Steel

Corporation ("National Steel"), and TL Express, jointly or severally, caused the death of Rickey L.

Knox Sr. ("Knox").  In the Complaint, the Estate, Mischell Knox, and Rickey L. Knox, Jr. demanded

compensatory damages in the amount of $21,000,000.00 with the Estate demanding $11,000,000.00

in compensatory damages, Mischell Knox, individually, demanding $7,000,000.00 in compensatory

damages, and Rickey L. Knox, Jr., individually, demanding $3,000,000.00 in compensatory damages.

On February 14, 2005, Defendant TL Express filed a Motion to Dismiss.  On April 1, 2005, District Court Judge Philip P. Simon entered an Order denying as moot Defendant TL Express's Motion to Dismiss.

On February 18, 2005, the Plaintiffs filed the First Motion for Leave to File an Amended Complaint, which was granted on February 28, 2005.

On February 21, 2005, Wheeler filed a Motion to Dismiss.  On April 1, 2005, Judge Simon entered an Order, denying as moot the Motion to Dismiss filed by Wheeler.

On February 28, 2005, the Plaintiffs filed a Motion for Entry of Default Judgment as to National Steel.  On April 5, 2005, Judge Simon entered an Order denying with leave to refile the Plaintiffs' Motion for Default Judgment.

On March 4, 2005, the Estate filed an Amended Complaint against Wheeler, Arlington, National Steel, and TL Express.  The Amended Complaint named only the Estate of Rickey L. Knox, Sr. as plaintiff, brought by Mischell Knox, Personal Representative of the Estate of Rickey L. Knox, Sr.  The Amended Complaint did not name Mischell Knox and Rickey L. Knox, Jr. as plaintiffs.  The Amended Complaint alleges that on February 3, 2003, Knox, age 47, was driving his truck hauling engine blocks and collided with the flat bed trailer that was being pulled by Wheeler's tractor.[1]  The Amended Complaint further alleges that at the time of the collision, Wheeler's flat bed

---

[1] The Amended Complaint provides that Knox's date of death was February 3, 2003.  Am. Cmplt., p. 1. However, the Amended Complaint indicates two pages later that the accident occurred "[o]n or about March 3, 2003." *Id.*, p. 3.  Nevertheless, in the Response to the Motion for Summary Judgment, the Estate claims under the section titled "Statement of Material Facts" that the accident took place and that the Knox was killed on February 3, 2003.  *See* Pl. Br., p. 1.

was loaded with steel coils, which were loaded at Arlington Metals and owned by National Steel, and that TL Express had assigned/contracted/routed the load to Wheeler. The Amended Complaint alleges that at impact, the steel coils broke away and struck Knox, causing his death.

Count I, paragraph 4, of the Amended Complaint alleges that TL Express assigned/contracted/routed the load of steel coils on Wheeler's flat bed. In paragraphs 11, 14, 15, and 16 of Count II, the Amended Complaint alleges that the Defendants were engaged in a joint enterprise to transmit the steel coils across state lines and state highways; TL Express hired Wheeler to haul the steel coils from Michigan into Indiana; the Defendants, jointly and severally, put the transport and delivery of the steel coils above the safety of the public, including Knox; TL Express breached the duty of care; TL Express carelessly and negligently failed to ensure that the load was secure or that the flat bed was secured to the fifth wheel of Wheeler's tractor; TL Express carelessly, negligently, or intentionally miscalculated the total weight of the steel coils Wheeler was to haul; and TL Express carelessly, negligently, or intentionally conducted, ratified, and allowed Wheeler to overload his vehicle and flat bed and to avoid weigh stations for vehicle or weight checks in Michigan or Indiana.

On March 9, 2005, TL Express filed an Answer to the Amended Complaint, and on March 10, 2005, Wheeler filed an Answer to the Amended Complaint.

On March 4, 2005, Arlington filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, which Judge Simon denied as moot on April 1, 2005.

On March 15, 2005, the Estate filed a Motion to Dismiss Arlington, which was granted on April 1, 2005, by Judge Simon. On April 5, 2005, a Clerk's Entry of Default was entered as to National Steel.

On April 25, 2005, TL Express filed the instant Motion for Summary Judgment and a Memorandum in Support of the Motion for Summary Judgment.  A Response Brief was filed by the Estate on May 26, 2005.  On June 3, 2005, TL Express filed a Reply Brief.

On May 26, 2005, the Estate filed a Motion to Dismiss defendant National Steel, which was granted by Judge Simon on May 31, 2005.

On June 2, 2005, the parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2]  Rule 56(c) further

---

[2] Neither party included the federal standard for ruling on a motion for summary judgment.  TL Express failed to include any standard for summary judgment in its Motion for Summary Judgment.  In contrast, the Estate included the Indiana *state* law standard for summary judgment in its response brief.  The standard for summary judgment in federal court is governed by federal, not state, law.  *See Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 334 (7th Cir. 1994) (holding that the federal standard applies to a ruling on summary judgment) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986); *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990)); *see also Cole v. Gohmann*, 727 N.E.2d 1111, 1114 (Ind. Ct. App. 2000) ("Indiana does not adhere to *Celotex* and the federal methodology.") (citing *Jarboe v. Landmark Cmty. Newspapers*, 644 N.E.2d 118, 123 (Ind. 1994)).  Under the Indiana standard for summary judgment, the moving party must demonstrate the absence of any genuine issue of fact as to a determinative issue; only then must the non-movant come forward with contrary evidence.  *See Cole*, 727 N.E.2d at 1114.  In contrast, under the federal standard, the moving party is not required to negate an opponent's claim; rather "the movant need only inform the court of the basis of the motion and identify relevant portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact,'" and the "burden then rests upon the nonmoving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof."  *Id.* (quoting *Celotex* Corp. 477 U.S. at 323).

4

requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

# FACTUAL BACKGROUND

The following are the facts viewed in the light most favorable to the Estate, the nonmoving party.[3]  On November 13, 2001, Wheeler and TL Express entered into a "Contract for Transportation of Property" ("Contract"), which is an agreement for the transportation of certain property tendered directly or indirectly by the Broker, TL Express, to the Carrier, Wheeler.  The following are paragraphs of the Contract relevant to the present dispute:

> 11.    It is the intent of the parties that Carrier shall be and remain an independent contractor and nothing therein contained shall be construed to be inconsistent with that relationship.  Carrier agrees to indemnify and have harmless Broker from any and all claims of any type or nature arising or growing out of the transportation operations and activities of the Carrier hereunder, and assumes full responsibility for all salaries, insurance, pensions and benefits of the employees of the Carrier in performance of this Agreement.

> 12.    This Agreement shall be governed by and interpreted under the laws of the State of Ohio.

> 13.    This Agreement shall be in effect for a period of one (1) year from the date of execution, and from year-to-year thereafter, subject to the right of either party to cancel or terminate the Agreement at any time by providing thirty (30) days written notice.  In the event that either party breaches any term or

---

[3] The facts of the case are derived from TL Express's Statement of Material Facts and its supporting documentation.

Local Rule 56.1(a) requires that a party opposing a motion for summary judgment shall submit a response that includes a "Statement of Genuine Issues" setting forth all material facts as to which a genuine issue exists and may be litigated.  Local Rule 56.1(a) further provides that the "Statement of Genuine Issues" and the facts stated therein, shall set forth all material facts, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence.  In the "Statement of Genuine Issues," the non-moving party's response is not required "to respond to each and every fact, point by point, [but] it does require that the nonmoving party submit potentially determinative facts and identify factual disputes" that may preclude summary judgment. *Fox v. Lear Corp.*, 327 F. Supp. 2d 946, 948 (S.D. Ind. 2004).  Failure to include such crucial facts may be detrimental to the non-movant's case because the Court assumes the facts as claimed and supported by admissible evidence by the moving party, unless they are controverted with supporting evidence by the non-moving party.  *See* L.R. 56.1(b)

Although the Estate included a "Statement of Material Facts" in its Response Brief with three numbered paragraphs, the Estate did not provide any citation to discovery responses, affidavits, depositions, or other admissible evidence in support of the alleged material facts.  *See* L.R. 56.1.  Moreover, the Estate did not provide the required "Statement of Genuine Issues" setting forth the material facts to which a genuine issue exists.  *See id.*  Accordingly, the Court will rely on the uncontested, admissible material facts presented by TL Express in its Statement of Material facts.

condition of this Agreement, the Agreement may be immediately terminated by providing written notice to the offending party.

14.     This Agreement constitutes the entire agreement and understanding between the parties and shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties.

Def. Br., Exh 1-A.

TL Express had no right, or even the ability, to control the actions of Wheeler at any time.[4] TL Express did not advise Wheeler of any route to take, and TL Express did not have any right to control the loading and operation of Wheeler's trailer.  TL Express did not have the ability to allow Wheeler to "avoid weigh stations," nor did the Contract allow TL Express to determine the weight of the tractor-trailer.  Def. Br., Exh 1, ¶ 6.  At no time did TL Express have the right to determine what amount of property was to be placed on Wheeler's truck.


**ANALYSIS**

In the Motion for Summary Judgment, TL Express argues that (1) TL Express may not be held liable for Wheeler's alleged negligence in the automobile accident with Knox because Wheeler was an independent contractor, (2) TL Express had no duty or right to control the actions of Wheeler, and (3) Indiana tort law should apply to this dispute.

In response, the Estate argues that TL Express may not avoid liability because TL Express had Wheeler engaging in an inherently dangerous activity.  In addition, the Estate asserts that the

---

[4] In the Reply Brief, TL Express contends that it is "uncontroverted that T.L. Express was the agency that brokered the load."  Def. Reply, p. 1.  However, there are no facts in evidence demonstrating that T.L. Express in fact brokered the specific load involved in the collision that lead to Knox's death.  However, it is unlikely that TL Express would continue to defend this action if it were not the broker and TL Express admits through its briefing that it is the broker.  Therefore, for the purposes of this motion only, the Court will assume that TL Express is the broker of the load carried by Wheeler that was involved in the collision that lead to Knox's death.

relationship between TL Express and Wheeler should be determined in accordance with Ohio law because the Contract contains a choice-of-law clause, which dictates that the Contract shall be governed by the law of the State of Ohio.  The Estate also argues that certain paragraphs of the Affidavit of Philip J. Dybzinski contain conclusions of law and should be stricken.

### A.  The Affidavit of Philip J. Dybzinski

As an initial matter, the Court addresses the Estate's contention that the Affidavit of Philip J. Dybzinski ("Dybzinski Affidavit"), submitted by TL Express in support of the Motion for Summary Judgment, contains conclusions of law that should be stricken from the record.  In arguing that parts of the Dybzinski Affidavit are inadmissible, the Estate failed to raise its objection in a separate motion as required by Local Rule 56.1(d), which provides that "[a]ny dispute regarding the admissibility of evidence should be addressed in a separate motion in accordance with L.R. 7.1." L.R. 56.1(d).  Local Rule 7.1(b) provides that "[e]ach motion shall be separate; alternative motions filed together shall each be named in the caption on the face."  L.R. 7.1(b).  Regardless, the Court would have raised the admissibility of the Dybzinski Affidavit *sua sponte*, and the language of Local Rule 56.1(d) provides only that the admissibility of evidence "should" rather than "shall" be addressed in a separate motion.[5]  Therefore, the Court will consider the admissibility of the statements in the Affidavit despite the procedural error by the Estate.

---

[5] Nevertheless, the Court impresses the importance of the Local Rules on the Estate.  In certain circumstances, a failure to conform to the Local Rules may lead the Court to disregard arguments or deny motions.

The Court also notes that TL Express does not respond to the merits of the Estate's argument regarding the Dybzinski Affidavit, but rather relies on the procedural defect that the Estate did not file its objections in a separate motion.  Therefore, TL Express has waived any objection to the Estate's arguments that statements within the Affidavit are inadmissible or should be disregarded by the Court.

Pursuant to Local Rule 56.1(a), a movant shall include a "Statement of Material Facts" supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence.  Federal Rule of Civil Procedure 56(e) provides that affidavits submitted in support of or in opposition to a motion of summary judgment must be made on personal knowledge and must contain statements that would be admissible in court as evidence.  *See* Fed. R. Civ. P. 56(e); *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988).  Federal Rule of Evidence 602 further mandates that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter."  *See* Fed. R. Evid. 602; *Davis,* 841 F.2d at 189.  Affidavits containing legal arguments, self-serving statements without factual support in the record, or mere speculation or conjecture are not properly included in an affidavit supporting or opposing summary judgment and should be disregarded by the court.  *See, e.g., Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) (self-serving affidavits); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) (speculation or conjecture); *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) (legal conclusions).

The Dybzinski Affidavit was offered in support of TL Express's "Statement of Material Facts," itself offered in support of the Motion for Summary Judgment.  The Affidavit contains the following paragraphs:

> 4.    At no time did TL Express have any *duty* of applicable Federal law to secure the load."
>
> . . . .
>
> 6.    At no time did TL Express have any *duty* or ability to allow Wheeler to "avoid weigh stations".
>
> . . . .
>
> 8.    At no time did TL Express have *the duty* or the right to determine what amount of property [sic] to be placed on the truck.

10

9.      That under the contract, William Wheeler was a driver for an independent contractor "Wheeler Around Trucking" and TL Express had no *duty* to supervise or control his actions.

Pl. Br., Exh. 1 (Dybzinski Aff.) (emphasis added).  These paragraphs contain legal conclusions as to the duty of TL Express with regard to Wheeler at the time of the collision.  Nothing in the Contract, the only document offered in support of the Affidavit, addresses the duties of TL Express in relation to Wheeler other than to provide that Wheeler Around Trucking is an independent contractor.  Accordingly, because these legal conclusions as to TL Express' duties in relation to Wheeler are an expression of legal opinion and are not a recitation of a "fact" to which Dybzinski is competent to testify, the legal arguments contained in paragraphs 4, 6, 8, and 9 of the Dybzinski Affidavit are disregarded by the Court and have no bearing on this Court's ruling on the Motion for Summary Judgment.  *See Pfiel*, 757 F.2d at 862.

## B.  Rule 56(f)

In its Response Brief, the Estate makes allusions to a need for additional discovery regarding whether the Contract was in effect on February 3, 2003, and whether Wheeler was working pursuant to the Contract.[6]  In addition, the Estate makes the conclusory statement that "Wheeler's status on February 3, 2003 remains a genuine issue of material fact."[7]  Pl. Resp., p. 3.  The Court generously construes both these statements as a request by the Estate for further discovery on the issues of (1)

---

[6] Pursuant to paragraph 13 of the contract, "[t]his Agreement shall be in effect for a period of one (1) year from the date of execution, and from year-to-year thereafter, subject to the right of either party to cancel or terminate this Agreement at any time by providing thirty (30) days written notice."  Def. Br., Exh. 1-A.

[7] This statement by the Estate is made at the conclusion of a paragraph asserting that Ohio law governs the interpretation of the Contract pursuant to Paragraph 12 of the Contract and that TL Express had not cited any Ohio law as to an employer's liability for the negligence of an independent contractor.  The statement that "Wheeler's status on February 3, 2003 remains a genuine issue of material fact" appears to be a non sequitur.

the existence of the Contract on February 3, 2003, and (2) Wheeler's status as an independent contractor.

A party can move for summary judgment at any time, and, in fact, even before discovery has begun. *See* Fed. R. Civ. P. 56(b); *Brill v. Lante Corp.*, 119 F.3d 1266, 1275 (7th Cir. 1997); *Chambers v.  American Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994).  Similarly, a court may decide a motion for summary judgment prior to and even "during discovery so long as the record reveals no genuine issue of material fact." *Brill*, 119 F.3d at 1275.  Pursuant to Federal Rule of Civil Procedure 56(f), if the party opposing summary judgment cannot present facts that are essential to support the party's opposition, the court may allow for additional discovery if the non-moving party submits an affidavit demonstrating that further discovery is needed to oppose the motion.  *See* Fed. R. Civ. P. 56(f); *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005).  However, an opposing party's general statement in its response to summary judgment that additional discovery is required is insufficient to serve as the functional equivalent of an affidavit filed under Rule 56(f).  *See Woods v. City of Chicago*, 234 F.3d 979, 990-91 (7th Cir. 2000); *see also Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) (citing *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375, 1380 (D.C. Cir. 1988)); *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488-489 (6th Cir. 2000).

The Estate has not filed an affidavit as required by Rule 56(f).  The failure to file such an affidavit, alone, is sufficient grounds for the Court to deny its request for additional discovery.  *See Woods*, 234 F.3d at 990 (citing *Wallace v. Tilley*, 41 F.3d 296, 302-03 (7th Cir.1994); also citing *Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1060 (7th Cir. 1994); *Kinney v. Indiana Youth Ctr.*, 950 F.2d 462, 466 (7th Cir. 1991)).

Furthermore, even if the Court were to waive the affidavit requirement of Rule 56(f), the Court would still deny the request for additional discovery.  Regarding the status of the Contract on February 3, 2003, the Estate argues that TL Express has not designated any evidence that the Contract was in existence on the date of the collision, that the Dybzinski Affidavit does not indicate that Wheeler was working pursuant to the Contract on February 3, 2003, or that Wheeler was even assigned the load.  However, the Estate fails to explain what additional discovery the Estate may require regarding whether the Contract was in effect on February 3, 2003, why the effectiveness of the Contract at the time of the collision would affect or alter the nature of the relationship between Wheeler and TL Express, or why the nonexistence of the Contract at the time of the collision would impose greater liability on TL Express for the negligence of Wheeler.  *See id.* (reasoning that the plaintiff offered "virtually nothing" to demonstrate why additional discovery would generate a genuine issue of material fact).  Nor has the Estate explained why proof that Wheeler was not hauling the load pursuant to the Contract or that Wheeler was not assigned the load involved in the collision would impose greater liability on TL Express in the case.

Regarding the issue of Wheeler's status as an independent contractor, the Estate simply offers the unsupported assertions that the pick up and delivery schedule of the load was "possibly" determined by TL Express, that the weight of the load was known to TL Express before it was known to Wheeler, and that Wheeler "probably" could not refuse to pick up the entire load, insinuating that TL Express purposefully overloaded Wheeler's truck.  Pl. Br., p. 4.  In contrast, TL Express offered the Dybzinski Affidavit, which specifically avers that TL Express did not have the kind of control over Wheeler's operations that the Estate is suggesting.  *See Kaszuk*, 791 F.2d at 558 (holding that if the movant offers an affidavit in support of a motion for summary judgment, the

burden shifts to the nonmoving party to show that a genuine issue of material fact exits).  More important to the Rule 56(f) analysis, however, is that the Estate did not explain in its brief the basis and source for these beliefs regarding TL Express' alleged control of Wheeler's load and what evidence it believes it is likely to discover that would support its speculative belief that TL Express had any such control.  *See id.* at 991.  Therefore, the Court denies the Estate's request for additional discovery.

### C.  Choice of Law: Liability of Broker for Negligent Actions of Independent Contractor

Before considering whether TL Express can be held liable for Wheeler's actions in this case, the Court must first address the choice of law conflict to determine what substantive law to apply. In contending that TL Express is not to be held liable for the negligent actions of Wheeler on the date of the collision between Wheeler and Knox, TL Express relies on Indiana tort law.  In contrast, the Estate argues that Ohio law is the appropriate law for determining TL Express's liability for the actions of Wheeler as an independent contractor because of the choice of law clause found in the Contract executed between TL Express and Wheeler.  Accordingly, the Court must determine whether Indiana or Ohio, or some other law, governs the liability of TL Express in this case.

Generally, a court will look to the "whole law of the forum in which it sits, including that state's choice-of-law rules." *Soo Line R.R. Co v. Overton*, 992 F.2d 640, 643 (7th Cir. 1993) (citing *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596, 600 (7th Cir. 1982)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity jurisdiction must apply the conflict of law rules of the forum state).  "Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766

N.E.2d 1157, 1162 (Ind. 2002) (citing *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999);

*Homer v. Guzulaitis*, 567 N.E.2d 153, 156 (Ind. Ct. App. 1991), *trans. denied*; *Barrow v. ATCO Mfg.*

*Co.*, 524 N.E.2d 1313, 1315 (Ind. Ct. App. 1988)).  However, a contractual choice of law provision

"will not be construed to govern tort as well as contract disputes unless it is clear that this is what

the parties intended." *Kuehn v. Children's Hosp., Los Angeles*, 119 F.3d 1296, 1302 (7th Cir. 1997).

In the present case, the choice-of-law clause in paragraph 12 of the Contract provides: "This

Agreement shall be governed by and interpreted under the laws of the State of Ohio."  Def. Br., Exh.

1-A.  However, the issue on this motion for summary judgment is the tort liability of a principal for

the actions of an independent contractor and not a dispute as to the interpretation of the Contract.

The Estate has not set forth any evidence demonstrating a genuine issue of material fact as to

Wheeler's status as an independent contractor pursuant to the Contract, nor does the Estate argue

that any other aspect of the Contract is in dispute.  Accordingly, the dispute presently before the

Court is a matter of tort law.  An examination of the Contract demonstrates that there is no clear

indication that the parties in this case intended that the choice of law clause in the Contract govern

tort claims in addition to contractual claims.  *See, e.g., Cerabio LLC v. Wright Med. Tech., Inc.,*

2005 WL 1385289, *4 (7th Cir. June 13, 2005) (recognizing that, because there was no clear

indication in the contract that the parties intended for the choice of law clause to govern tort claims,

the choice-of-law principles of the forum state applied) (citing *Klaxon*, 313 U.S. at 496).  Therefore,

under *Klaxon* and its progeny in the Seventh Circuit, the Court will apply the choice-of-law rules

of the forum state in which it sits, Indiana, to determine the substantive tort law that will be applied

in this case.

Traditionally, Indiana courts followed the doctrine of *lex loci delicti*–the law of the place where the injury occurred–when determining conflict of laws in tort cases. *See Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004); *Cox v. Nichols*, 690 N.E.2d 750, 752 (Ind. Ct. App. 1998). However, in *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987), the Indiana Supreme Court modified its application of *lex loci delicti* and held that *lex loci delicti* is the starting point for conflict of law analysis in tort cases and governs the analysis unless the state in which the tort occurred "is an insignificant contact." 515 N.E.2d at 1073.

Under the Indiana choice of law analysis, the first step is for the court to determine whether the difference between the laws of the states are "important enough to affect the outcome of the litigation." *Simon*, 805 N.E.2d at 805 (citing *Hubbard*, 515 N.E.2d at 1073). If there is not a conflict between the purpose or policy of the laws of the two states, a false conflict exists, and the forum should apply forum law. *See Lutz v. DeMars*, 559 N.E.2d 1194, 1196 n. 1 (Ind. Ct. App. 1990) (citing E. Scoles and P. Hay, Conflict of Laws § 17.32 (1984 Ed.)). However, if a conflict between the laws of the two states exists, the "presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply." *Simon*, 805 N.E.2d at 805 (citing *Hubbard*, 515 N.E.2d at 1073). Under *lex loci delicti*, a court "applies the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id*. (internal quotation marks omitted) (citing *Hubbard*, 515 N.E.2d at 1073). However, the presumption of *lex loci delicti* may be overcome if the court finds "that the place of the tort bears little connection to [the] legal action." *Id*. (citing *Hubbard*, 515 N.E.2d at 1074). In such an instance, the court should consider additional factors such as "1) the place where the conduct causing the injury occurred; 2) the residence or place

16

of business of the parties; and 3) the place where the relationship is centered." *Hubbard*, 515 N.E.2d at 1073-74 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)).

Accordingly, the Court must first determine if there is a difference between the laws of Indiana and Ohio important enough to affect the outcome of the litigation.[8]  Under both Indiana and Ohio tort liability law, the general rule is that a principal is not liable for the torts of an independent contractor.  *See Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941, 946 (7th Cir. 1984) (citing *Cummings v. Hoosier Marine Props., Inc.*, 363 N.E.2d 1266 (Ind. 1977)); *Strayer v. Lindeman*, 68 Ohio St. 2d 32, 34 (1981) (holding that an employer is generally not liable for the acts of an independent contractor); *Graves v. Lucas County Dept. of Human Servs.*, No. L-91-372, 1992 WL 206951, *1 (Ohio Ct. App. Aug. 21, 1992) (citing *Albain v. Flower Hosp.*, 50 Ohio St. 3d 251 (1990) ("The doctrine of *respondeat superior* does not apply to an employer of an independent contractor.").

One of the exceptions to this rule under both Indiana and Ohio law is that a nondelegable duty exists when a principal engages an independent contractor in "inherently dangerous" or "intrinsically dangerous" work.  *Bagley v. Insight Commc'n Co.,* 658 N.E.2d 584, 586 (Ind. 1995) (citing *Perry v. Northern Ind. Public Serv., Co.*, 433 N.E.2d 44, 47 (Ind. Ct. App. 1982)) (holding that the exception to the rule applied when "the contract requires the performance of intrinsically dangerous work"); *Graves*, 1992 WL 206951, at *1 (citing *Covington and Cincinnati Bridge Co. v. Steinbock and Patrick*, 61 Ohio St. 215 (1899)) (holding that "a nondelegable duty exists where the work performed is inherently dangerous").

---

[8] Although each party argues for the application of a different body of state law, neither party addresses Indiana conflict of law doctrine nor analyzes whether there is a true conflict between Indiana and Ohio tort law on the issue of liability of a principal for the actions of an independent contractor.

Finally, in Indiana, "hauling steel or any other heavy load is not 'inherently dangerous,' 'intrinsically dangerous,' 'ultra-hazardous,' or 'abnormally dangerous' as those terms are used in strict liability." *Inland Steel v. Pequignot*, 608 N.E.2d 1378, 1385 (Ind. Ct. App. 1993). Similarly, in Ohio, the operation of commercial motor vehicles has been held not to be an "inherently dangerous" activity. *George v. H. James Fry Trucking, Inc.*, C.A. No. L-82-074, 1982 WL 6442, * (Ohio Ct. App. June 11, 1982) (citing *May v. The James G. Pardee Co.*, 165 Ohio St. 126 (1956); *Williamson v. Eclipse Motor Lines, Inc.*, 145 Ohio St. 467 (1945)).

Therefore, there is not a conflict between the laws of Indiana and Ohio on the issue of liability of a principal for the torts of an independent contractor that is important enough to affect the outcome of the litigation. Accordingly, the Court will apply the law of Indiana to the dispute in this matter.

**D.  Liability of Principal for Actions of Independent Contractor Under Indiana Law**

TL Express argues that it is not liable for the negligent actions of Wheeler because Wheeler was an independent contractor. To succeed in a negligence action in Indiana, a plaintiff must prove (1) the existence of a duty owed to the plaintiff by the defendant; (2) a breach of the duty by the defendant; and (3) an injury to the plaintiff that was proximately caused by that breach. *See City of Muncie ex rel. Muncie Fire Dept. v. Weidner*, 831 N.E.2d 206, 211 (Ind. App. 2005) (citing *King v. Northeast Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003); *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004)). However, under Indiana tort liability law, the general rule is that a "principal is not liable for the torts of an independent contractor." *Stone*, 741 F.2d at 946 (citing *Cummings*, 363 N.E.2d 1266). "[W]here a party exercising independent employment causes injury

18

to another, the person employing that party will not be liable in damages for injury resulting from such party's wrongful acts or omissions."  *Perry*, 433 N.E.2d at 47.

Indiana courts recognize five exceptions to this general rule that a principal is not liable for the negligence of an independent contractor.  *See Bagley,* 658 N.E.2d at 586.  The five exceptions are: "(1) *where the contract requires the performance of intrinsically dangerous work*; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal."  *Perry*, 433 N.E.2d at 47 (emphasis added).

> In determining whether an activity is abnormally dangerous, the following factors are to be considered: (a) Existence of a high degree of risk of some harm to the person, land or chattels of another; (b) Likelihood that the harm that results from it will be great; (c) Inability to eliminate the risk by the exercise of reasonable care; (d) Extent to which the activity is not a matter of common usage; (e) Inappropriateness of the activity to the place where it is carried on; (f) Extent to which its value to the community is outweighed by its dangerous attributes.

*Inland Steel*, 608 N.E.2d at 1385.  Whether or not an activity is "inherently dangerous" is a matter of law to be decided by the court.  *Id*.  Furthermore, when Indiana courts review strict liability cases involving the legal relationships between a principal and an independent contractor, the court "must not look at the abstract propensities of the particular substance involved, but must analyze the defendant's activity as a whole."  *Id*. (citing *Ebrich Products Co., Inc. v. Wills,* 509 N.E.2d 850, 856 (Ind. Ct. App. 1987)).  "If the rule was otherwise, virtually any commercial or industrial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous.  This result would be intolerable."  *Id*. (citing *Ebrich Products*, 509 N.E.2d at 856).

The Estate argues that, even though general tort principles hold that the principal cannot be held liable for an independent contractor's acts, TL Express may be held liable for Wheeler's acts because TL Express engaged Wheeler to perform an inherently dangerous activity.  However, as noted above, "hauling steel, or any other heavy load, is not 'inherently dangerous,' 'intrinsically dangerous,' 'ultra-hazardous,' or 'abnormally dangerous' as these terms are used in strict liability." *Id.* (holding that hauling 48,000 pounds of steel coils was not inherently dangerous).  In *Indiana Steel*, the court reasoned that hauling steel is not inherently dangerous and that if the driver of the truck had used reasonable care, the accident would not have occurred because the truck driver had run a red light driving at a speed of forty miles an hour.  *Id.*  However, the court in *Indiana Steel* also noted that the 48,000 steel coil was not the proximate cause of the plaintiff's injuries because the plaintiff motorcyclist ran into the tractor trailer; the coil of steel did not fall off the trailer and injure him.  *Id.*  In contrast, in the present case, the steel coils broke away from Wheeler's semi-tractor trailer and struck Knox.[9]

Despite this seemingly important difference in the facts of this case and those of *Indiana Steel*, an examination of the six factors to be considered when determining if an activity is inherently dangerous nevertheless leads to the conclusion that the hauling of steel coils by semi tractor trailer is not an inherently dangerous activity.  *See id.*  First, there is not a high degree of risk of harm to someone driving another vehicle from the use of tractor trailers to haul steel coils based on the number of such vehicles circulating in traffic on a daily basis; however, the likelihood of the harm that would flow from an accident with such a vehicle does seem great, as compared to an accident

---

[9]  The facts of the accident are not offered into evidence by either party through the form of an affidavit or otherwise.  However, the court has taken the facts as alleged by the Plaintiff in the Amended Complaint for the purposes of this analysis.  Notably, in the Reply Brief, TL Express concedes that Wheeler was operating a semi tractor trailer loaded with a coil of steel.

between two automobiles.  Nevertheless, some of the risk could be eliminated by the exercise of reasonable care in loading and securing the load of steel, in properly maintaining the tractor trailer, in obeying the rules and regulations for the weight of the load, and in operating the tractor trailer. Also, the use of tractor trailers and the hauling of steel coils are common, and it is appropriate that such trucks be on the highways and roadways.  Finally, the benefit to society of the timely and efficient transport of steel and other materials by means of tractor trailers on our roadways, when the exercise of such use is carried out with reasonable care, outweighs the dangerous attribute of hauling such materials, such as the materials breaking away and striking another vehicle.

Although the hauling of steel coils by tractor trailer brings with it some additional dangers and the possibility of greater harm in the event of an accident, it is not an "inherently dangerous activity" as that term is used when determining the liability of a principal for the negligence of an independent contractor.  Therefore, the exception that might hold TL Express liable for the tortious acts of Wheeler is not applicable in this case.  Accordingly, TL Express cannot be held liable for the tortious acts of Wheeler, its independent contractor.

**E.  Independent Basis for Liability by TL Express**

Finally, TL Express argues that, although Wheeler and Wheeler Around Trucking, as the driver and the motor carrier, had duties under federal law regarding inspections, reporting, and safety, no such duties are imposed on a broker such as TL Express in this case.  TL Express further argues that, under federal law, a broker has no duty to control the actions of an independent contractor.  The Estate makes no response to this basis for liability on the part of TL Express.  Nor does the Estate provide any additional argument as to why there is any other independent basis for

liability on the part of TL Express.  Under the federal summary judgment standard, the Court finds that the Estate has not come forward with any evidence or argument demonstrating a genuine issue of material fact as to any basis for liability by TL Express independent of any liability flowing from Wheeler's negligence.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** the Defendant's Motion for Summary Judgment [DE 35].  The Court **ORDERS** that the Plaintiff's Amended Complaint is dismissed as to Defendant Triple Lady's Agency d/b/a TL Express.  The Plaintiff's Complaint **REMAINS PENDING** as to William Wheeler d/b/a Wheeler Around Trucks and Arlington Metals Corp.

SO ORDERED this 25th day of August, 2005.


 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record