UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ESTATE OF RICKEY L. KNOX, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:05-CV-19-PRC |
| ) | |
| WILLIAM WHEELER d/b/a WHEELER ) | |
| AROUND TRUCKS, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on (1) a Motion for Summary Judgment [DE 64], filed by Defendant William Wheeler d/b/a Wheeler Around Trucks ("Wheeler") on March 3, 2006; (2) a Motion to Strike Portions of the Affidavit and Report of Stephan Neese [DE 74], filed by Wheeler on April 18, 2006; (3) Plaintiff's Daubert Motion [DE 77], filed by the Estate of Rickey L. Knox, Sr. On May 1, 2006; (4) a Motion to Exclude Trial Testimony of Plaintiff's Accident Reconstructionist, Stephan Neese [DE 78], filed by Wheeler on May 1, 2006; (5) Plaintiff's Amended Daubert Motion [DE 88], filed by Plaintiff the Estate of Rickey L. Knox, Sr., on June 23, 2006; and (6) a Motion to Strike the Affidavit of Stephan Neese [DE 90], filed by Wheeler on June 30, 2006. For the following reasons, the Court grants the Motion for Summary Judgment and denies as moot the remaining motions.

**PROCEDURAL BACKGROUND**

On January 18, 2005, original Plaintiffs, the Estate of Rickey L. Knox Sr. ("the Estate"), Mischell Knox, and Rickey L. Knox, Jr., filed a Complaint in this Court alleging that the negligence of Arlington Metals Corp., National Steel Corp., Triple Lady's Agency, Inc., and William Wheeler ("Wheeler") caused injuries to the Plaintiff.

On February 18, 2005, the Estate filed a Motion for Leave to File an Amended Complaint. That motion was granted on February 28, 2005. The Estate then filed an Amended Complaint on March 4, 2005, omitting Mischell Knox and Rickey L. Knox, Jr. as Plaintiffs.

On March 10, 2005, Wheeler filed an Answer to the Estate's Amended Complaint.

On March 15, 2005, the Estate filed a Motion to Dismiss Arlington Metals Corp. which was granted by Judge Phillip P. Simon on April 1, 2005.

On May 26, 2005, the Estate filed a Motion to Dismiss National Steel Corp. which was granted on May 31, 2005 by Judge Simon.

On June 2, 2005, the case was reassigned, upon full consent of the parties, to Magistrate Judge Paul R. Cherry. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On August 25, 2005, the Court granted Triple Lady's Agency Inc.'s Motion for Summary Judgment, which had been filed on April 25, 2005.

On March 3, 2006, Wheeler filed the instant Motion for Summary Judgment. On April 3, 2006, the Estate filed a Response in Opposition, and on April 18, 2006, Wheeler filed a Reply.

### SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e)

establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

**FACTUAL BACKGROUND**

The following are the facts viewed in the light most favorable to the Estate, the nonmoving party. On February 3, 2003, a collision occurred between Rickey L. Knox, Sr. and William Wheeler at the intersection of Route 30 and Highway 421 near Wanatah, Indiana, at approximately 2:52 p.m.

Wheeler was a self-employed truck driver on the day of the accident. He first obtained his Commercial Driver's License in 1997 and maintained the license through the date of the accident. Wheeler operated his trucking business under the name Wheeler Around Trucking. At the time of the accident, Wheeler was hauling a load of eleven steel coils on his flatbed. The steel coils were strapped down with nylon straps.

4

On February 3, 2003, there was heavy fog and visibility was very poor at and around the intersection of Route 30 and Highway 421. As Wheeler encountered the fog, he reduced his speed to 30 miles per hour and turned on his headlights. Additionally, the stop light at the intersection, which ordinarily changed from green to yellow to red, was flashing red in all directions. Wheeler, traveling southbound on Highway 421 in a semi tractor trailer, approached the intersection, came to a complete stop, waited from six to ten seconds or more while automobiles stopped then crossed the intersection in front of him from both directions, looked in all directions (each side and straight ahead), and then proceeded to enter the intersection.

Wheeler did not see any traffic approaching the intersection, and he did not see Knox's semi prior to the impact. While Wheeler was accelerating and when the tractor of his semi was even with the westbound turn lane, Knox who was traveling westbound on Route 30 and who did not stop at the intersection, struck Wheeler's trailer. There is no evidence of any pre-impact braking of either truck. At the time of collision, Wheeler was traveling between 8-15 miles per hour while Knox was traveling between 26-55 miles per hour. Knox died as a result of the collision.

## ANALYSIS

### A. Motion for Summary Judgment

In his Motion for Summary Judgment, Wheeler asks the Court to find that he did not breach any duty of care owed to Knox or, alternatively, that no act or omission of Wheeler was a proximate cause of Knox's injuries. In response, the Estate asks the Court to find there are issues of material fact such that summary judgment is inappropriate. Because the Court finds as a matter of law that Wheeler did not breach any duty owed to Knox, which is sufficient to grant Wheeler's Motion for

5

Summary Judgment, the Court will not address Wheeler's second argument, namely that any breach was not a proximate cause of Knox's injuries.

In order to recover under a theory of negligence, the Estate must show (1) that a duty of care was owed to Knox, (2) that Wheeler breached that duty, and (3) that the breach proximately caused Knox's damages. *Estate of Cullop v. State*, 821 N.E.2d 403, 407 (Ind. Ct. App. 2005) (citing *Sizemore v. Templeton*, 724 N.E.2d 647, 650 (Ind. Ct. App. 2000)). Whether Wheeler owed a duty of care to Knox is a question of law for the Court to decide. *Estate of Cullop*, 821 N.E.2d at 407 (citing *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003)). Whether any particular act or omission by Wheeler breached a duty owed to Knox is ordinarily a question of fact for the jury. *Id*. However, whether any act or omission by Wheeler breached a duty owed to Knox can be a question of law where the facts are undisputed and only one inference can be drawn from those facts. *Id.*

In Indiana, "[a]ll operators of motor vehicles have a general duty to use ordinary care to avoid injuries to other motorists." *Wilkerson v. Harvey*, 814 N.E.2d 686, 693 (Ind. Ct. App. 2004) (citing *Allied Fidelity Ins. Co. v. Lamb*, 361 N.E.2d 174, 180 (Ind. Ct. App. 1977)). This duty requires that the motorist "use due care at the time and place in question and act as a reasonable and prudent person would act under the same or like circumstances." *Wallace v. Doan*, 292 N.E.2d 820, 825 (Ind. Ct. App. 1973). "The mere fact that one vehicle has the right of way over another vehicle at a street or road intersection, does not relieve the driver of the vehicle thus favored from the duty to exercise reasonable care to avoid collision at such intersection." *Anderson v. Pre-Fab Transit Co.*, 409 N.E.2d 1157, 1162 (Ind. Ct. App. 1980) (quoting *Davis v. Dondanville*, 26 N.E.2d 568, 570 (Ind. Ct. App. 1940)). However,

> [it] is well settled that one who is lawfully using a public highway, in the absence of knowledge to the contrary, has the right to assume that others using it in common with him will use ordinary care to avoid injuring him, nor is such motorist bound to anticipate and safeguard against violations of statutory law or negligent operation by other motorists upon the highway.

*Id.* (quoting *Stull v. Davidson*, 127 N.E.2d 130, 136 (Ind. Ct. App. 1955)); *see also Associated Truck Lines v. Velthouse*, 84 N.E.2d 54 (Ind. 1949); *Elgin Dairy Co. v. Shepherd*, 108 N.E. 234 (Ind. 1915); *Crane v. Newman*, 37 N.E.2d 732 (Ind. Ct. App. 1941); *Toenges v. Walter*, 32 N.E.2d 95 (Ind. Ct. App. 1941); *Kraning v. Bloxson*, 5 N.E.2d 649 (Ind. Ct. App. 1937); *Rump v. Woods*, 98 N.E. 369 (Ind. Ct. App. 1912). In *Anderson*, where the defendant did not stop at a red light and then collided with the plaintiff, the court held that, if the plaintiff was not on notice that the other motorist would violate the law, the plaintiff had no duty to look both directions on the non-preferred road to see if any approaching drivers were going to violate the law. *Id.* at 1163.

More recently, the Indiana Court of Appeals has reiterated that a motorist is not required to anticipate extraordinary hazards or to constantly expect and search for unusual dangers. *McDonald v. Lattire*, 844 N.E.2d 206, 213 (Ind. Ct. App. 2006). In *McDonald*, the court held that the preferred driver who did not have a stop signal at an intersection was not required to anticipate that a driver who was required to stop at the intersection would disregard the stop sign. *Id.* (quoting *Berg v. Glinos*, 538 N.E.2d 979, 981 (Ind. Ct. App. 1989)). The court also held that the "preferred driver has the right to assume the non-preferred driver will obey the traffic laws and is not required to proceed overly cautiously into an intersection and be cognizant of everything in plain view." *Id.* (quoting *Anderson*, 409 N.E.2d at 1164). Based on this applicable duty under Indiana law, the Court finds, as a matter of law, that Wheeler did not breach any duty owed to Knox.

The Estate cites claims that Wheeler owed other motorists, including Knox, a general duty "to keep a proper lookout to see that which [was] clearly visible or that which in the exercise of due

7

care would [have] be[en] visible." Pl. Resp. Br., p. 5.  The Estate relies on *Wilkerson* for this claim, which in turn cites *Smith v. Beaty*, 639 N.E.2d 1029, 1033 (Ind. Ct. App. 1994). *See Wilkerson*, 814 N.E.2d at 694.  However, in its analysis, the court in *Wilkerson* first establishes that a preferred driver, the defendant, was not required to anticipate that the driver on a non-preferred road, the plaintiff, would break the law.  814 N.E.2d 692 (citing *Berg*, 538 N.E.2d at 981-82; *Anderson*, 409 N.E.2d at 1163-64; *Wallace v. Doan*, 292 N.E.2d 820, 825 (1973)).  This is the same duty set forth above in the instant Order and the duty that the Court finds applicable to the facts of this case, as set forth more fully below.  The court in *Wilkerson* then went on to consider whether under Indiana Code § 9-21-5-4(5) the snow bank at the intersection constituted a special hazard that would have required the defendant to reduce her speed and decided that whether and to what extent the defendant needed to reduce her speed was a question for the jury.  *Id*. at 693.  Finally, as to that portion of *Wilkerson* cited by the Estate, the court acknowledged that "a motorist is charged with the duty of exercising ordinary care to observe dangers and obstructions and is chargeable with notice of obstructions that a person of ordinary prudence would reasonably be expected to observe." *Id*. (citing *Smith v. Beaty*, 639 N.E.2d 1029, 1033 (Ind. Ct. App. 1994)).  As to each of the holdings in *Wilkerson*, only the first is applicable to the facts of the present case.

As to the last issue in *Wilkerson*–the general duty to "keep a proper lookout" to observe dangers and obstructions cited by Knox–both *Wilkerson* and *Smith*, on which *Wilkerson* relies, dealt specifically with the duty to observe *obstructions*, which in the context of those cases constituted non-moving objects not controlled by another motorist, such as a snow bank or an overturned vehicle in the roadway.  *Wilkerson*, 814 N.E.2d at 693-94; *Smith*, 639 N.E.2d at 1033.  This language ultimately traces back to *Opple v. Ray*, where this duty to observe obstructions included only non-moving objects not controlled by another motorist.  *See Opple v. Ray*, 195 N.E. 81, 84

8

(Ind. 1935) (holding that a motorist "is only chargeable with notice of *obstructions* that a person of ordinary prudence would be reasonably expected to observe") (emphasis added).  In fact, the *Opple* Court gives the examples of a "guy-wire, stretched across the way" and "a pole or metal bar . . . project[ing] several feet into the highway," and the case involves a car abandoned on the side of the road. *Id*.  In contrast with the Indiana case law articulating this duty, in the instant matter, there was no static obstruction in Wheeler's view that would have prevented him from seeing Knox as in *Wilkerson*, nor was Knox a stationary physical obstruction in the pathway of Wheeler as in *Opple* and *Smith*.  This distinction is important in squaring the general duty to keep a look out for dangers or obstructions in the road with a motorist's right to assume that other motorists will use ordinary care and the principle that a motorist, although duty bound to use ordinary care to avoid injuries to motorists and to use due care at the time and place in question and act as a reasonable and prudent person would under the same or like circumstances, is not "bound to anticipate and safeguard against violations of statutory law or negligent operation by other motorists upon the highway." *Wilkerson*, 814 N.E.2d at 693-94 (citing *Smith*, 639 N.E.2d at 1033); *Anderson*, 409 N.E.2d at 1162 (quoting *Stull v. Davidson*, 127 N.E.2d 130, 136 (Ind. Ct. App. 1955)).

As to any special weather hazard and whether Wheeler was driving the appropriate speed, the Estate relies on Ind. Code § 9-21-5-4 and suggests that an issue of material fact exists as to whether Wheeler was driving too fast because he was at an intersection and there was heavy fog which may have been a special hazard.  Regarding Wheeler's speed, in contrast with the facts in *Wilkerson*, the uncontested facts of the case at bar belie Knox's argument.  Wheeler stopped at the intersection at which there were blinking red lights in all directions.  After waiting for other cars stopped in cross traffic to pass, he looked left, right, and straight ahead, and then he pulled his semi tractor-trailer loaded with steel coils into the intersection reaching a top speed of between 8-15 miles

9

per hour.[1]  The speed limit on the road that Wheeler was traveling was 55 miles per hour.  The Estate fails to address what an appropriate speed would have been under the traffic and weather conditions, or to offer any evidence that Wheeler's speed of 8-15 miles per hour was unsafe under those circumstances.  This alone makes the Estate's argument as to speed insufficient.  *See Matsushita,* 475 U.S. at 586.[2]  Given that Wheeler came to a full stop, did not clear his trailer from the westbound lanes of the intersection before being struck by Knox, and was towing a heavily loaded trailer, it is also difficult to conceive that Wheeler could have reached unsafe speeds.

As to the Estate's assertion that the fog was a special hazard requiring a motorist to reduce his speed from the posted limit, the Estate presents no evidence or law that the fog constituted a special hazard.  In accordance with the material facts of record, Wheeler came to a full stop at the blinking red light on Highway 421 at the intersection, allowing the traffic stopped at the blinking red light on Highway 30 to cross and clear.  Again, after looking left, right, and ahead, he pulled into the intersection, and when his tractor was even with the westbound turn lane, Knox, who did not obey the flashing red light on Highway 30, collided with Wheeler.  Although Wheeler testified that there was fog at the intersection of Highways 421 and 30 at the time of the collision, Wheeler, unlike the defendant in *Wilkerson*, did not testify that the fog created an obstruction that blocked his view

---

[1] The Estate directs the Court to no evidence regarding the speed of Wheeler in its response brief, which is particularly suspect given its claim that summary judgment should not be given because there exists an issue of material fact regarding whether he was going too fast considering the circumstances.  *See Matsushita Elec. Indus.,* 475 U.S. at 586 (holding that to defeat a summary judgment motion, "the nonmoving party must *come forward* with *specific facts* showing that there is a genuine issue for trial") (internal quotations and citation omitted and emphasis added).  Having reviewed the Estate's designation of evidence offered in support of its response, the Court observed that the Estate's expert estimates that Wheeler's speed may have been between 8-11 miles per hour while Wheeler's expert claims the speed was approximately 15 miles per hour.  Because the Estate does not present any evidence that these speeds were unsafe given the conditions, the Court will not withhold summary judgment on this basis. *Id.*

[2] It is hard to imagine that the safe speed to travel on a highway with a posted limit of 55 miles per hour under conditions of low visibility would be under 15 miles per hour, and therefore the Court doubts that the Estate would be able to present such evidence.

of the traffic stopped at the flashing red light on Highway 30. The Estate has not met its burden on summary judgment of raising a genuine issue of material fact as to whether Wheeler exercised reasonable care given Wheeler's acknowledgment of the fog.

In the instant matter, Wheeler had a general duty to "use ordinary care to avoid injuries to other motorists," *Wilkerson*, 814 N.E.2d at 693, and to "use due care at the time and place in question and act as a reasonable and prudent person would act under the same or like circumstances," *Wallace*, 292 N.E.2d at 825. However, Wheeler, "in the absence of knowledge to the contrary," had the right to assume that Knox would use ordinary care to avoid injuring Wheeler. *See Anderson*, 409 N.E.2d at 1162 (quoting *Davis*, 26 N.E.2d at 570). The uncontested evidence establishes that Wheeler had no "knowledge to the contrary," or, in other words, that Wheeler had no knowledge that Knox would not "use ordinary care to avoid injuring him" by failing to stop at the blinking red light on Route 30 after Wheeler had already pulled into the intersection, having advanced his tractor to a position even with the westbound turn lane. Wheeler has testified that he did not see Knox until the impact. Therefore, because he was "lawfully using a public highway," Wheeler had the right to assume Knox would use ordinary care to avoid a collision. *Id*. Although Knox's expert opined that, had Wheeler looked to the left, he should have seen Knox's vehicle approaching from the east prior to and during his pull-out and would have had the opportunity to stop prior to encroaching into Knox's path,[3] nothing in the expert's opinion suggests that Wheeler should have had "knowledge" that Knox would fail to stop at the intersection and fail to use ordinary care to avoid the collision. Further, Wheeler was not bound to anticipate that Knox would violate the law and operate his vehicle negligently by failing to stop at the blinking red light at the

---

[3] As identified in the opening paragraph of this Order, Wheeler has filed a motion to strike portions of Knox's expert report. However, for the purposes of summary judgment only, the Court considers those opposed portions, finding that they do not create a genuine issue of material fact as to the breach of the duties owed by Wheeler to Knox.

11

intersection of Route 30 and Highway 421 nor was Wheeler required to safeguard against such negligence. *Id*.

By stopping at the four-way stop intersection, allowing the vehicles already stopped to pass in front of him, and then proceeding into the intersection after it was clear and when he had the right of way, Wheeler did not breach the "general duty to use ordinary care" that he owed Knox by virtue of their both being motorists. *Wilkerson*, 814 N.E.2d at 693. Nor has Knox demonstrated that Wheeler owed Knox any additional duty that would require him to anticipate the circumstances of this collision. Therefore, the Estate has not shown that any genuine issue of material fact exists that Wheeler breached his duty of care owed to Knox when Wheeler pulled into the intersection.

The Estate also suggests that Wheeler may be negligent not just for the collision itself, but also for the resultant injuries to Knox because Wheeler allegedly did not properly secure his trailer to his tractor or his load to his trailer. Under this theory, the Estate claims, even if Wheeler was not negligent in pulling into the intersection, he is still negligent for increasing the severity of Knox's injuries by not properly maintaining his tractor, trailer, and load. Once again, the Estate provides inadequate evidence and law to support this theory.

As to securing his load, the Estate simply offers that Wheeler's load was secured by nylon straps and suggests that summary judgment is inappropriate because Wheeler's use of nylon straps instead of chains could have caused or contributed to Knox's death. Pl. Resp. Br. p. 9. However, the Estate provides no evidence to support this conclusion. It does not suggest that chains are the industry standard, nor even that chains better secure a load to a trailer, and does not provide any evidence to this effect. It does not provide any evidence that Wheeler's load was secured in an unsafe or negligent manner. The Estate attempts to imply that a question of fact remains as to whether Wheeler was negligent by simply reciting the fact that the straps securing the load on

12

Wheeler's trailer were nylon; this is insufficient to rebut the motion for summary judgment. *See Matsushita,* 475 U.S. at 586.

The Estate also suggests that Wheeler may not have adequately checked his load, tractor, and trailer. The Estate points to evidence that the "fifth wheel locking mechanism was damaged prior to the crash."[4] Pl. Resp. Br. p. 8. The Estate does not provide a theory or evidence as to how or whether that damage, if it did exist prior to the crash, caused or contributed to the injuries sustained by Knox. Upon examination of the evidence offered in support of Knox's response brief, the Estate's expert does not suggest that the damage contributed or was even relevant to the collision or Knox's injuries. Rather, he uses his theory of how the piece might have been damaged to refute Wheeler's expert's claim that the damage was caused by, and indicative of the force of, the collision. In sum, neither the Estate, nor its expert, claim, let alone provide evidence to support a claim, that any pre-collision damage that may have been present to the fifth wheel caused or contributed to Knox's injuries. Therefore, the evidence brought forth by the Estate is insufficient to rebut Wheeler's motion for summary judgment. *See Matsushita,* 475 U.S. at 58.

### B. Other Motions

Several motions have been filed in this case concerning the parties' expert witnesses. The experts primarily present evidence of Knox's speed, Wheeler's speed, the visibility at the scene, and the circumstances of the collision. The most contentious issues are Knox's speed and any attempt to steer away from the collision that may have occurred. However, because the Court finds that

---

[4] The Estate's citation is only to "Neese affidavit, Exhibit 08," providing no page or paragraph number. Pl. Resp. Br. p. 8. By closely examining the entire document, most of which is irrelevant to this argument, the Court was able to locate the portion to which it believes the Estate was referring, specifically the paragraph numbered 9 on the fourth page of Neese's affidavit.

Wheeler breached no duty owed to Knox, Knox's speed is not relevant.  It is uncontested that Knox did not stop at the flashing light, and this evidence is sufficient for the Court's finding.

The Estate suggests that Wheeler's speed is important because he may have been operating his tractor at an unsafe speed.  Because this claim by the Estate is legally insufficient, as earlier discussed, and because even if the Court accepts the Estate's expert's testimony[5] it is not shown that Wheeler's speed was negligent, it is not necessary to decide the motions to the extent that they address Knox's speed.

Lastly, any attempt to brake or otherwise avoid the collision by Knox is irrelevant because such facts are completely independent of the Court's analysis and finding that Wheeler did not breach any duty owed to Knox.  Accordingly, the Court denies as moot the motions to strike and *Daubert* motions.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment [DE 64].  The Court **DENIES as moot** (1) the Motion to Strike Portions of the Affidavit and Report of Stephan Neese [DE 74]; (2) Plaintiff's Daubert Motion [DE77]; (3) the Motion to Exclude Trial Testimony of Plaintiff's Accident Reconstructionist, Stephan Neese [DE 78]; (4) Plaintiff's Amended Daubert Motion [DE 88]; and (5) the Motion to Strike the Affidavit of Stephan Neese, filed June 30, 2006 [DE 90].  The Court **DIRECTS** the Clerk of the Court to enter judgment

---

[5] Interestingly, Wheeler's expert actually estimates that Wheeler was traveling faster than is estimated by the Estate's expert.  Therefore, for this issue, the evidence most favorable to the Estate may well be the evidence that it contests in its Daubert motion.  Using either experts' estimate, the Estate fails to show that Wheeler's speed was negligent.

14

in favor of the Defendant, William Wheeler d/b/a Wheeler Around Trucks, and against the Plaintiff, the Estate of Rickey L. Knox, Sr.

All pretrial and trial settings are **VACATED**.

SO ORDERED this 27th day of July, 2006.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record